**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| DENISE PALMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:13-cv-00293-JCC-TRJ |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff Denise Palmore ("Ms. Palmore") seeks judicial review of the final decision of defendant, the Acting Commissioner of the Social Security Administration ("Commissioner"). Pursuant to Title II of the Social Security Act, the Commissioner found that Ms. Palmore was not disabled prior to February 23, 2011, but became disabled on that date. R.[1] at 12. Briefly stated, plaintiff asserts that the Administrative Law Judge ("ALJ")'s decision was in error because the ALJ: 1) failed to properly weigh the medical opinion evidence, 2) erroneously assessed plaintiff's credibility and 3) relied on flawed vocational expert testimony. To the contrary, defendant contends that the ALJ's evaluations of the medical opinions in the record and plaintiff's credibility both incorporated in his residual functional capacity assessment were supported by substantial evidence and the law. Defendant also asserts that the ALJ properly solicited vocational expert testimony based on hypothetical questions consistent with his residual functional capacity assessment and in accordance with the law.

---

[1] "R." refers to the certified administrative record.

This action has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. §§ 636 (b)(1)(B),  Fed. R. Civ. Pro. 72(b), and Local Civil Rule 72.  Having carefully reviewed parties' briefs and the administrative record, and for the reasons that follow, the undersigned recommends that Ms. Palmore's Motion for Summary Judgment (No. 11) and Motion to Remand (No. 12), be denied; Defendant's Motion for Summary Judgment (No. 16) be granted; and that the final decision of the Commissioner be affirmed.

## I. <u>PROCEDURAL BACKGROUND</u>

Ms. Palmore filed concurrent claims for Social Security Disability Benefits ("SSD") and Supplemental Security Income benefits ("SSI') on August 19, 2009 and January 27, 2010, respectively.   R. at 211-215; 217-225.   She alleged a disability onset date of January 2, 2009 on the basis of schizophrenia, bipolar disorder, anxiety, irritable bowel syndrome ("IBS"), and hypertension.  R. at 224.  The state agency denied plaintiff's claim at the initial and reconsideration levels.  R. at 118-22; 129-42.  At plaintiff's request, an administrative hearing was held on June 21, 2011 at which plaintiff and a vocational expert testified.  R. at 34-69.

On July 8, 2011, the ALJ issued a decision finding that plaintiff was not disabled prior to February 23, 2011 but found that plaintiff was disabled as of February 23, 2011.  R. at 24.  The Appeals Council denied plaintiff's request for review on January 17, 2013, therefore making the ALJ's decision the final decision of the Commissioner.  R. at 1-6.  Plaintiff timely filed a complaint for judicial review of the Commissioner's decision on March 5, 2013.  No. 1.  The Commissioner filed an answer to the complaint on June 3, 2013, No. 5, and the parties filed cross motions for remand and summary judgment, Nos. 11, 12 and 16.  This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Under the Social Security Act, the court's review of the Commissioner's final decision is limited to determining whether the Commissioner's decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence.  42 U.S.C. § 405(g); *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Richardson v. Perales*, 403 U.S. 389, 401 (1971)).  As the Fourth Circuit has stated, substantial evidence is "evidence which a reasonable mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Hays*, 907 F.2d at 1453 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In determining whether the Commissioner's decision is supported by substantial evidence, the court must examine the record as a whole.  The court may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary."  *Maestro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (citing *Craig v. Chater*, 76 F.3d at 589 (4th Cir. 1996)).  If the ALJ made specific credibility determinations, supported by a discussion of specific evidence and an evaluation of plaintiff's testimony, then the ALJ's credibility findings receive great weight.  *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  If the ALJ's findings as to any fact are supported by substantial evidence, they are conclusive and must be affirmed.  *Perales*, 402 U.S. at 390.  Furthermore, the ALJ as the trier of fact is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine claimant's residual functional capacity.  *Hays*, 907 F.2d at 1456-57.  Overall, if the ALJ's findings and resolution of conflicts in the evidence are supported by substantial evidence, the court is to affirm the Commissioner's final decision.  *Laws v.*

*Celebreeze*, 368 F.2d 640,642 (4th Cir. 1966).  As further discussed below, the magistrate judge

concludes that each finding challenged by plaintiff is supported by substantial evidence in the

record and comports with the applicable legal standards.

### III. RELEVANT FACTUAL BACKGROUND

At the time of her alleged onset, January 2, 2009, Ms. Palmore was a 51 year old female

with a high school education.  R. at 211.  Plaintiff's last full time job was as an administrative

assistant at a law firm.  R. at 42.  In late 2008 and early 2009, plaintiff took leave under the

Family Medical Leave Act (FMLA) from that job to take care of her ill mother.  R. at 42-44.

During her leave, on February 6, 2009, plaintiff dislocated her right shoulder after falling down

the stairs.  R. at 43.  As a result, plaintiff received a closed reduction and participated in doctor

recommended physical therapy.  R. at 43;445.  Following her shoulder dislocation, plaintiff

continued to experience pain and discomfort despite some improvements of her shoulder.  R. at

445.

Plaintiff planned to return to work in early April 2009 and was cleared by her treating

doctor to return to work on July 1, 2009 but plaintiff was terminated as her position had been

filled.  R. at 44; 866; 910.   Shortly thereafter, plaintiff applied for unemployment benefits which

she collected until May 2010.  R. at 45.  As a prerequisite for receiving unemployment benefits,

plaintiff certified that she was physically and mentally able to work.  *Id.*  While she received

unemployment benefits, plaintiff actively sought out employment by regularly applying to jobs

and was eventually able to secure a part-time clerk position at Target in May 2010.  R. at 41; 45;

60.  Plaintiff testified that she quit this job after six days of work after her schedule was changed

to a later time and she was given more difficult duties that required her to stand and use her right

arm.  R. at 41-42; 1687.

Plaintiff alleged that she was unable to work as of January 2, 2009—her onset date, primarily because of mental health conditions which included anxiety, depression, bipolar disorder, and schizophrenia. R. at 264. Plaintiff has an extensive history of mental health conditions. R. at 862; 1510. Prior to February 23, 2011, plaintiff regularly struggled with anxiety, stress, and depression partly stemming from having to care for her ill mother who passed, losing her full time position, and dealing with financial pressures. R. at 918; 920;1712;1790. In January 16, 2009, plaintiff was admitted to a partial hospitalization program for suicidal ideations and feelings of hopelessness. R. at 420-431. She was later released from the program and participated in follow up group therapy. *Id.*

Also, Ms. Palmore was diagnosed with schizoaffective disorder by her treating psychiatrist, Dr. Prasanna, who began treating her in May 2007. R. at 867; 918; 925; 1515. On October 18, 2009 and February 22, 2010, respectively, Dr. Prasanna completed a Mental Status Evaluation Form and Psychiatric/Psychological Impairment Questionnaire on which it was noted that plaintiff was unable to focus and had no hobbies, although Dr. Prasanna found plaintiff's speech, orientation and memory were within normal limits and that she had only mild limitations in understanding detailed instructions. R. at 864-65; 1518-1519. In several of Dr. Prasanna's routine counseling reports, the doctor indicated that plaintiff was well groomed, cooperative, alert, orientated, and attentive despite having poor insight and judgment. R. at 870-925.

Plaintiff has sought various treatments for her mental and emotional conditions including regular counseling, diagnostic testing, group therapy and anti-depressant medication like Ambien and Zoloft. R. at 47; 430-31; 1780. Starting in September 2009, plaintiff sought additional counseling treatment from the Rappahannock Area Community Services Board and a licensed counselor, Ms. Heath, for her depression and paranoid schizophrenia. R. at 930; 949; 953; 1667.

In addition to her mental health impairments, plaintiff suffered from obesity, irritable bowel syndrome, hypertension, hyperlipidemia, abdominal pain and degenerative joint disease of the right shoulder.  R. at 691-93; 1418, 1505; 1637; 1805-06.  In April and May of 2009, plaintiff was diagnosed with gastroenteritis and chronic abdominal pain although radiology, imaging, colonoscopy and abdominal testing revealed no significant abnormal findings.  R. at 461; 471; 486; 493; 501; 520-39; 561-62; 692; 1474.  From January through May 2011, plaintiff sought medical treatment for her interment abdominal pain.  R. at 1885-88; 1891-96; 1907; 2408.

As for plaintiff's daily activities, plaintiff reported occasionally driving short distances to her doctor's appointment, looking for work some days, getting groceries, performing light gardening and cleaning chores, and doing arts and crafts with her grandchildren.  R. at 49-58; 299; 342.  Despite these daily activities, plaintiff testified that she experienced daily functional limitations due to her physical and mental impairments.  *Id*. at 45-58.  Plaintiff testified that she is currently unable to work because she is unable to stand or sit for long periods, has difficulties walking and using her dominant right arm, experiences constant body pain, and has memory problems.  R. at 48-51.

After February 2011, plaintiff's physical and mental condition deteriorated.  On February 18, 2011, plaintiff went to the emergency room due to full body pain.  R. at 1820.  A doctor's treatment notes dated February 23, 2011 indicated that plaintiff's physical condition was worsening.  R. at 1800.  Her primary care physician noted that plaintiff was getting weaker in her arms, experienced pain and numbing throughout her body, and was in severe distress.  *Id.*  Plaintiff reported to her doctor that she could not drive anymore, had difficulty walking, and dropped things.  *Id.*  In March and April 2011, doctors found that plaintiff suffered from chronic pain and diagnosed her with fibromyalgia-type symptoms.  R. at 1801.  By August 27, 2011,

plaintiff went to the emergency room because of intense suicidal thoughts. R. at 2093.  She was admitted to the mental health department and was recommended inpatient psychiatric treatment. R. at 2093; 2106.

## IV. ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

In every Social Security Disability claim analysis, the ALJ is required to first determine whether the claimant met the insured status requirement.[2]  Then, the ALJ must conduct a five-step sequential evaluation to determine if the claimant is disabled and therefore eligible for disability insurance benefits.  20 C.F.R. § 416.920(a).  It is this five-step process that the court examines on appeal to determine whether the correct legal standard was applied and whether the resulting decision was supported by substantial evidence in the record.  20 C.F.R. §§ 404.1520; 416.920.  The five-step disability inquiry requires a determination, in sequence, on (1) whether plaintiff is engaged in substantial gainful activity; (2) whether plaintiff has a severe impairment; (3) whether plaintiff has a severe impairment that met the requirements of a "listed" impairment; (4) plaintiff's residual functional capacity ("RFC") and ability to perform past relevant work; and (5) plaintiff's ability to perform any other work in the national economy.  R. at 21-29; *See* 20 C.F.R. § 404.1520(a)(4).

In a decision dated July 8, 2011, the ALJ found that plaintiff met the last insured status requirement based on her earning records which indicate that she remained insured through December 31, 2014.[3]  R. at 12.  After reviewing the record and testimony presented, the ALJ made the following five findings set forth in his decision:  First, Ms. Palmore has not engaged in substantial gainful activity since the alleged onset date of January 2, 2009.  R. at 14.  Second,

---

[2] *See* 42 U.S.C. § 423(a).
[3] To qualify for disability insurance benefits, she must prove that she became disabled prior to the expiration of her insured status which here is December 31, 2014.  R. at 12.  42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. § 404.101(a).

since the alleged onset date she had severe impairments including obesity, IBS, degenerative

joint disease of the right shoulder, depression, and schizoaffective disorder.  Beginning on the

established onset date of February 23, 2011, she had fibromyalgia in addition to the previously

mentioned severe impairments.  The ALJ found that most of these impairments were controlled

by medication and caused no more than minimally vocationally relevant limitations.  R. at 15.

Third, she did not have a severe impairment or combination of impairments meeting or

medically equaling one of the listed impairments in 20 C.F.R. § Part 404.  *Id*.

Fourth, she was unable to perform any past relevant work since January 2, 2009.  Prior to

February 23, 2011, claimant had the residual functional capacity to perform light work with

certain physical and mental limitations.  R. at 16.  Specifically, the ALJ determined that prior to

February 23, 2011, plaintiff had the following functional limitations:

> [Claimant] should never climb ropes, ladders, and scaffolding. She should not be
> required to raise the right dominant arm above shoulder level on more than an
> occasional basis. Due to her mental impairments, she would be limited to
> unskilled work, and as the phrases are commonly understood, jobs that involve
> simple routine tasks, with short simple instructions, work that needs little or no
> judgment to do simple duties that can be learned on the job in a short timeframe,
> only simple work-related decisions with few workplace changes. She should have
> no more than occasional level of direct face-to-face interaction with the general
> public and she should have no more than an occasional level of direct face-to-face
> interaction on the completion of an assigned task or duty, but this would not
> preclude routine daily face-to-face interaction on the job site.

After February 23, 2011, the ALJ found that claimant had the residual functional capacity

to perform sedentary work with certain enumerated limitations.  R. at 22.

Fifth, prior to February 23, 2011, there were jobs in significant numbers that existed in

the national economy that plaintiff could have performed but after February 23, 2011, there were

no jobs in the national economy that plaintiff could have performed based on her RFC, age, and

experience.  R. at 23-24.  After applying the five-step analysis, the ALJ concluded that Ms.

Palmore was not disabled prior to February 23, 2011, but became disabled on that date and continued to be disabled through the date of the decision.  R. at 12.

# V. ANALYSIS

Ms. Palmore raises three issues on judicial review.  The first issue is whether the ALJ erroneously weighed the opinion evidence primarily from Drs. Prasanna and Schuette, plaintiff's treating physicians, and Ms. Heath, plaintiff's treating therapist.  The second issue is whether the ALJ erroneously assessed plaintiff's credibility regarding the frequency and severity of her pain and symptoms.  The third issue is whether the ALJ properly relied on the vocational expert's testimony.  After review of the entire record and in consideration of the parties' arguments, the magistrate judge concludes that the ALJ's findings on these three issues are supported by substantial evidence in the record and comport with governing law.

## 1. THE WEIGHT THE ALJ AFFORDED THE OPINIONS OF DR. PRASANNA, DR. SCHUETTE AND MS. HEATH IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND COMPORTS WITH APPLICABLE LAW

First, Ms. Palmore argues that the ALJ erred by failing to give controlling weight to the opinions of her treating physicians, Drs. Prasanna and Schuette.  The magistrate judge disagrees and finds that the ALJ properly evaluated the opinions of her treating doctors.  Under the controlling regulations, treating source medical opinions that are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with other substantial evidence in [the] case record" are given "controlling weight."  20 C.F.R. § 404.1527(c)(2).  "Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight."  *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir.1992).  The Fourth Circuit has explained that medical opinions that are inconsistent with the record and are not well-

supported should be afforded "significantly less weight."  *Mastro v. Apfel*, 270 F.3d 171, 178

(4th Cir. 2001); *Hunter*, 993 F.2d 31, 35 (explaining that an "ALJ may choose to give less

weight to the testimony of a treating physician if there is persuasive contrary evidence").  In

determining what weight to give to medical opinion not afforded controlling weight, the ALJ

should consider the factors set forth in 20 C.F.R. §§ 401.1527(c); 416.927 which include the

length and nature of the treatment relationship, the opinion's supportability, consistency of the

opinion with the record, specialization, and any other factors that support or contradict the

opinion.

    a. The ALJ's evaluation of Dr. Prasanna's opinion was supported by substantial evidence
and consistent with applicable law.

    As part of plaintiff's residual functional capacity assessment, the ALJ evaluated the

medical opinion of Dr. Prasanna, plaintiff's treating psychiatrist, who began treating plaintiff in

2007.  R. at 867-909.  On October 18, 2009, Dr. Prasanna completed a Mental Status Evaluation

Form at the request of the Social Security Administration.  R. at 864-65.  On the evaluation form,

Dr. Prasanna recorded plaintiff's long history of mental illness but also stated that plaintiff's

speech, orientation, abstract reasoning, and memory were all within normal limits.  R. at 862-

866.  On February 22, 2010, Dr. Prasanna completed a psychological impairment questionnaire

which included a global assessment of functioning (GAF) assessment score of plaintiff.  R. at

1515-1522.  Dr. Prasanna diagnosed plaintiff with schizoaffective disorder with a GAF score of

45 which represents that the patient has serious symptoms or serious impairments in social,

occupational, or school functioning.[4]  *Id.*

    In the decision, the ALJ stated that he afforded Dr. Prasanna's opinion "little weight"

because it was "completely inconsistent with the routine counseling notes, as well as her partial

---

[4] Diagnostic and Statistical Manual of Mental Disorders 4th Ed. ("DSM-IV").

hospitalization notes of January 2009" and her daily activities.  R. at 21-22.  The magistrate

judge finds that the ALJ's decision to afford Dr. Prasanna medical opinion "little weight"  is

supported by substantial evidence in the record that contradict Dr. Prasanna's medical opinion

including the doctor's own treatment notes, plaintiff's daily activities and state agency

assessments.

Dr. Prasanna's medical opinion departs substantially from routine counseling notes and

progress reports which consistently demonstrate that although Ms. Palmore suffered from

depression, fatigue and sleep issues she was relatively well-adjusted.  R. at 870-925.  For

example in the February 22, 2010 questionnaire, Dr. Prasanna found that plaintiff had a GAF

level of 45 which indicates serious impairments to social functioning and opined that plaintiff

was markedly limited in her ability to carry out detailed instructions and complete a workweek

without interruptions because of psychologically based symptoms.  R. at 1515-19.  Particularly,

the severity of this GAF level is partly discounted by other mental and emotional status findings

and counseling notes by Dr. Prasanna which demonstrate that plaintiff's mental and social

abilities were not as disabling and severely limiting as these findings suggest.  In spite of these

findings, Dr. Prasanna on the same form found that Ms. Palmore was only mildly limited in most

of the categories under social interactions like the ability to get along with co-workers or peers

and maintain socially appropriate behaviors.  Also, the doctor indicated that plaintiff had no

limitations in her ability to remember work-like procedures and understand two step instructions.

R. at 1518-19.

Moreover, in every counseling report leading up to the October 18, 2009 Mental Status

Evaluation Form and February 2010 questionnaire, Dr. Prasanna uniformly checked on a form

that plaintiff was well groomed, her behavior was cooperative, her sensorium was alert, complete

orientation, she was attentive, her speech fluent and her risk of harming herself was low.  R. at 906-24; 1629-37.  Additionally, Dr. Prasanna consistently noted that although plaintiff's judgment and insight were poor, plaintiff's concentration, memory, recall, thought process, motor and perceptual skills were all within normal limits.  *Id*.  These counseling reports are significantly inconsistent with the doctor's mental status and psychological evaluations including global assessment functioning score which indicate that plaintiff had significantly more severe mental and social functional limitations.  *Id*.

Additionally, the ALJ's finding that Dr. Prasanna's medical opinion should receive "little weight" is supported by substantial evidence of other instances of contradictory information contained in Dr. Prasanna's reports.  For example, in the February 22, 2010 questionnaire, Dr. Prasanna stated that "plaintiff has tried to return to work several times but was not able to complete the tasks given."  R. at 1520.  Dr. Prasanna's statement is inconsistent with the record as there is no evidence that plaintiff attempted to return to work several times when she was on continuous leave from December 2008 through July 2009, the date when she was notified that her position was filled.  R. at 41-42.  In discounting Dr. Prasanna's medical opinion, the ALJ also properly considered some of plaintiff's activities which included occasional driving, grocery shopping, applying for jobs, interacting with grandchildren and doing yard work which are tasks that are rationally related to the extent and nature of plaintiff's functional abilities.  R. at 21. While a claimant's daily activities can be accorded too much weight, they are certainly relevant in this context, and the ALJ appears to have given them appropriate weight in his analysis.

Also, the ALJ considered the supportability of Dr. Prasanna's medical opinion which was lacking in support and consistency.  R. at 20.  In the decision, the ALJ noted that "no psychological testing had been performed" as part of the October 18, 2009 Mental Status

Evaluation.  R. at 20; 865.  Furthermore, in the February 22, 2010 questionnaire, when asked to "identify the laboratory and diagnostic test results which … support your diagnosis," Dr. Prasanna merely writes "mental status exam."  In *Mastro*, the Court explained that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight" which is what the ALJ properly determined here.  270 F.3d at 178 (4th Cir. 2001).

Moreover, the ALJ discusses that he afforded Dr. Prasanna's medical opinion limited weight because it was inconsistent with plaintiff's partial hospitalization notes of January 2009 which to an extent undermine the severity of plaintiff's limitations as described by her treating physician.  On January 16, 2009, plaintiff checked into the Mary Washington Hospital for partial hospitalization because of helplessness and suicidal thoughts.  R. at 430.  The attending physician noted that plaintiff's insight, memory and judgment were intact as well as her alertness and orientation.  *Id.*  The physician also noted that she was given medication to alleviate her condition and actively participated in group therapy where she "interacted well with peers and staff."  R. at 431.

Also, plaintiff asserts that in discounting Dr. Prasanna's opinion, the ALJ inappropriately relied on the opinions from the non-examining state-agency psychological and medical consultants.  R. at 75-79; 91-97.  In the decision, the ALJ afforded these state agency opinions "great weight as they are consistent with the medical records contained in the file."  R. at 21. Plaintiff argues that these consultants failed to provide adequate explanations for their opinions and therefore their opinions do not rise to the level of substantial evidence.  Pursuant to SSA regulations, the ALJ is entitled to rely on the opinions of state agency medical or psychological consultants who are "highly qualified" and also "experts in Social Security disability

evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i); 416.927(e)(2)(i).  The magistrate judge finds that it was appropriate for the ALJ to afford great weight to these opinions as they were consistent with significant record evidence that plaintiff was only moderately or not significantly limited in many of her mental and social capabilities.  Here, contrary to plaintiff's assertion, the record demonstrates that the state agency consultants had detailed information about plaintiff's condition from medical reports of her treating physicians and did indeed consider them in making their assessments.  R. at 71-73; 85-88.  Based on a review of the decision, the ALJ makes clear that he did not exclusively rely on the state agency opinions when deciding what weight to give to Dr. Prasanna's opinion but the ALJ considered other countervailing evidence.

Furthermore, the ALJ's stated reasons for assigning limited weight to Dr. Prasanna's opinion comport with factors listed in 20 C.F.R. §§ 401.1527(c)(2) like the nature of the treatment relationship and the opinion's supportability and consistency with the record which are discussed throughout the decision.  Overall, the ALJ's decision to afford Dr. Prasanna's medical opinion "little weight" is supported by substantial evidence including the doctor's own routine counseling notes, plaintiff's daily activities, and state agency consultants' opinions that counter the extent, severity, and duration of plaintiff's functional limitations prior to February 23, 2011. Therefore, the magistrate judge finds that the ALJ did not err in affording Dr. Prasanna's opinion little weight.

b. The ALJ's evaluation of Dr. Schuette's opinion was supported by substantial evidence and applicable law.

Plaintiff argues that Dr. Schuette's medical opinion should have been afforded controlling weight.  Also, plaintiff contends that the ALJ improperly rejected Dr. Schuette's opinion that plaintiff had a less-than-sedentary residual functional capacity assessment.  The magistrate judge finds that the ALJ's evaluation of Dr. Schuette is supported by substantial

14

evidence.  The ALJ found that the "opinion of Dr. Schuette's is given limited weight, as his assessment reflected a less than sedentary residual functional capacity, which is inconsistent with his generally routine treatment of claimant and the claimant's admitted activities of daily living." R. at 21.  Dr. Schuette completed a Multiple Impairment Questionnaire on February 18, 2010 and narrative report in which the doctor opined that plaintiff could not do a full-time job that required activity on a sustained basis, that plaintiff had marked limitations in using her left and right arm for reaching, and that her symptoms and treatment would interfere with her concentration.  R. at 1507-23.

The magistrate judge finds that the ALJ's determination to afford to Dr. Schuette's medical opinion "limited weight" is supported by substantial evidence.  The record shows that Dr. Schuette's treatment notes do not fully support her assessment that plaintiff could perform less than sedentary work.  In his report, Dr. Schuette noted that many of plaintiff's conditions like psychiatric problems, shoulder discomfort, hypertension and irritable bowel syndrome were being treated effectively by medication and were being managed under the supervision of other doctors.  R. at 1523.  Plaintiff argues that the ALJ failed to consider that plaintiff could not return to work in a full-time capacity based primarily on Dr. Schuette's advice on April 15, 2009 that plaintiff try "going back [to work] three days a week initially for the first two weeks to see how well she does." R. at 740.  However, the record reflects that Dr. Schuette's advice was only for a temporary period and was given after plaintiff "readily admit[ted] that she simply does not want to go back to work, not just because [her shoulder] hurts but because she just does not want to work." R. at 740.  Dr. Schuette's reports highlighted that plaintiff shoulder was improving with physical therapy and that she was capable of returning to work.  R. at 732.  Moreover, the ALJ properly discounted Dr. Schuette's medical opinion based on further inconsistencies in the

doctor's medical advice.  For example in Dr. Schuette's June 29, 2009 report, the doctor gave

plaintiff a note expressly clearing her to go back to work as of July 1, 2009, a date several

months after her alleged disability onset date of January 2009.  R. at 731; 1523-1524.  However,

the next day, Dr. Schuette wrote that disability "properly is appropriate for her" although there

was a lack of any significant change in plaintiff's medical condition.  *Id.*

Furthermore, the ALJ properly considered the assessments of state agency medical

consultants in determining what weight to afford Dr. Schuette's opinion as these consultants

opined that plaintiff had greater exertional and non-exertional abilities than those described by

Dr. Schuette.  R. at 21; 110; *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356,361 (3d Cir.

2011) ("state agency opinions merit significant consideration"); SSR 96-6p (explaining that state

agency consultants are highly qualified physicians and psychologists who are experts in the

evaluation of the medical issues in disability claims" and must consider these medical opinions

"together with the rest of the relevant evidence").  As discussed earlier, the ALJ did not solely

rely on the state agency medical consultants' opinions but consider other relevant and substantial

evidence like plaintiff's daily activities, Dr. Schuette's treatment reports, and other medical

evidence in the record.  For these reasons, the magistrate judge finds that ALJ did not err in

affording Dr. Schuette's opinion limited weight.

    c. <u>The ALJ Did Not Err in Giving "Little Weight" to Plaintiff's Treating Therapist, Ms.</u>
<u>Heath.</u>

Plaintiff asserts that the ALJ erred by giving "little weight" to the opinion of Ms. Heath, a

treating therapist.  From 2009 to 2010, plaintiff attended therapy sessions with Ms. Heath, a

licensed professional counselor.  R. at 929-940; 957-958; 1646-1647; 1676; 1778.  On April 8,

2010, Ms. Heath completed a Psychiatrist/Psychological Impairment Questionnaire.  R. at 1667-

1674.  In this questionnaire, Ms. Heath diagnosed plaintiff with paranoid schizophrenia with a

GAF score of 45-50 which represents that the patient has serious impairments in social, occupational, or school functioning.[5]  In the decision, the ALJ found that Ms. Heath's opinion should be afforded limited weight primarily on the grounds that such opinion were inconsistent with routine counseling notes and plaintiff's activities of daily living.  R. at 21.

The magistrate judge finds that the ALJ did not err in affording Ms. Heath's assessment of plaintiff "little weight" as the governing law does not require the ALJ to afford such opinions great weight and there is also substantial record evidence in the record that partly contradict the severity of her assessment.  Since Ms. Heath is a therapist, she is not an "acceptable medical source" and therefore is considered an "other source" not entitled to "controlling weight" pursuant to SSA regulations.  20 C.F.R. §§ 404.1527(d); 416.927(d).  Although non-acceptable medical sources like that  from Ms. Heath should be considered by the ALJ, such opinions should be weighed according to the factors in 20 C.F.R. §§ 404.1527(d); 416.927(d) including the extent of testing performed, consistency of opinion with other evidence and treatment provided.  Here, Ms. Heath only saw Ms. Palmore for a limited duration and provided only routine mental counseling treatment.  R. at 1668.  Moreover, the ALJ was not required to afford Ms. Heath's opinion controlling or even substantial weight in light of other contrary record evidence previously discussed that strongly support that plaintiff's mental limitations were not as disabling as Ms. Heath's report suggests them to be.  Accordingly, ALJ's determination to afford Ms. Heath's opinion little weight is well-supported by the record.

## 2. THE ALJ'S CREDIBILITY DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND THE LAW

Plaintiff argues that the ALJ erred in his credibility finding of Ms. Palmore because the ALJ erroneously applied the legal standard and did not provide a sufficient explanation.  In

---

[5] Diagnostic and Statistical Manual of Mental Disorders 4th Ed. ("DSM-IV").

support of this argument, plaintiff also contends that the ALJ overestimated her daily activities and her ability to return to work on a full-time capacity. The magistrate judge finds that the ALJ's credibility finding was supported by substantial evidence and determined in accordance with the two-step credibility analysis.

It is well-established by SSA regulations and Fourth Circuit precedent that the ALJ in evaluating a claimant's subjective complaints must engage in a two-step process. *See* 20 C.F.R. § 404.1529; *Craig v. Chater*, 76 F.3d 585, 594 (4th. Cir. 1996); *Hunter v. Sullivan*, 993, F.2d 31, 36 (4th Cir. 1992); *Mickles v. Shalala*, 29 F.3d 918, 919-20 (4th Cir. 1994). Under the first step, the ALJ must determine whether plaintiff has a medically-determinable impairment that could reasonably cause claimant's alleged pain and symptoms. *Id.* Second, the ALJ must evaluate plaintiff's statement about the intensity and limiting effects of her symptoms to the extent that they affect plaintiff's ability to work in light of the entire record. *See also Craig*, 76 F.3d at 585; SSR 96-7p; 20 CFR §§ 404.1529(c)(4), 416.929(c)(4). Pursuant to SSR 96-7p, such factors include an individual's daily activities, the dosage, effectiveness, and side effects of medication, and any other measures that the individual uses to relieve pain or symptoms. The ALJ's credibility finding should take into account all the available evidence, including the objective medical evidence of symptoms in order to determine if such factors are consistent with or contradictory to plaintiff's subjective complaints. *Craig*, 76 F.3d at 595-96; 20 CFR §§ 404.1529(c)(2), 416.929(c)(2) ("Objective medical evidence…is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of [claimant's] symptoms").

Based on an examination of the record, the magistrate judge finds that the ALJ's credibility finding is supported by substantial evidence and that the ALJ properly followed the two-step process for evaluating plaintiff's subjective complaints. At step one, the ALJ found that

plaintiff had a "medically determinable impairment" that could "reasonably be expected to cause the alleged symptoms." R. at 17.  However at step two, the ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were "not credible prior to February 23, 2011, to the extent they are inconsistent with the residual functional capacity." *Id*.

Plaintiff argues that the ALJ improperly applied the two-step credibility analysis based on the ALJ's phrase in his decision that plaintiff's symptoms were "not credible prior to February 23, 2011, to the extent they are inconsistent with the residual functional capacity."  R. at 17. Plaintiff contends that this phrase suggests that the ALJ incorrectly evaluated plaintiff's subjective statements against the ALJ's own RFC rather as part of the overall RFC evaluation. The magistrate judge finds that the ALJ's assessment of plaintiff's credibility was proper and supported by substantial evidence.  However, the magistrate judge notes that the ALJ's use of this "boilerplate language" has been scrutinized by other courts and flagged in claimant's argument. *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012); *Hardman v. Barnhart*, 362 F. 3d 676, 679 (10th Cir. 2004).  This template language has been critiqued because it creates the impression that the ALJ incorrectly performed the residual function capacity assessment by conducting the two-step analysis on plaintiff's subjective complaints independent from the RFC assessment. *Bjornson*, 671 F.3d at 645.  However, here, when the ALJ's similar phrasing is read in the context of the entire decision, it is clear that the ALJ followed the appropriate two-step process.  Moreover, the ALJ performed the credibility assessment as part of the overall RFC assessment which includes a lengthy discussion of the evidence.  R. at 17.

Additionally, plaintiff argues that the ALJ's credibility determination is not adequately reasoned and lacks support in the record.  To the contrary, the magistrate judge finds that the

ALJ sufficiently explained what specific evidence he considered in evaluating plaintiff's credibility and appropriately cited to several different evidence in the record that both support and contradict plaintiff's testimony.   R. at 22-27; *see* SSR 96-7p.   After thoroughly listing the evidence he considered, the ALJ concludes that the plaintiff's "conservative nature of her medical care, the limited objective medical findings, and the claimant's admitted activities all diminished her credibility regarding the frequency and severity of her symptoms and the extent of her functional limitations."   R. at 21.

The magistrate judge finds that the ALJ properly considered plaintiff's admitted activities in making his credibility determination.   In the decision, the ALJ discusses plaintiff's daily living activities which included weeding her yard, preparing simple meals, grocery shopping and cleaning her home.   R. at 21.   Although the magistrate judge recognizes that these activities of daily living do not necessarily equate to activities in a full time job or fully support that plaintiff is "totally independent in all activities of daily living" as stated by the ALJ, they are indeed relevant to plaintiff's functional abilities and the alleged limiting effects of her symptoms.   R. at 21.

Here, the ALJ not only considered these daily activities but also the plaintiff's other "admitted activities" which the magistrate judge finds rationally supports the ALJ's credibility determination.   Particularly, the ALJ discusses plaintiff's testimony that she looked for employment starting in July 2009 and had collected unemployment benefits until May 2010.   R. at 17; 1633.   In the decision, the ALJ notes that the "receipt of those benefits reflects that Ms. Palmore certified that she was physically and mentally able to work and was actively seeking employment."   R. at 45.   At the hearing, when plaintiff was asked if she believed that she could do the jobs she applied for if she had gotten them, she responded "Yes, I thought I could."   R. at

60.  In fact, as a result of plaintiff's employment search efforts, plaintiff was able to secure a job as a clerk at Target, albeit temporarily.  *Id.*

Under Fourth Circuit precedent and recent SSA policy, the receipt of unemployment benefits does not automatically preclude a finding that claimant is not entitled to Social Security benefits.  *See Lackey v. Celebreeze*, 349 F.2d 76,79 (4th Cir. 1975).  However, recent Social Security Administration policy has clarified that the "application for unemployment benefits is evidence that the ALJ must consider together with all of the medical and other evidence" and explains that it is often the "underlying circumstances that will be of greater relevant than the mere application."[6]

 Here, the fact that plaintiff was actively looking for employment and applying for positions that required some manual labor is partly inconsistent with her claims that she could not perform any work prior to February 23, 2011.  R. at 55.  Contrary to plaintiff's argument, plaintiff's receipt of unemployment benefits work was not a *post hac* rationalization for the ALJ's credibility finding, but was specifically discussed by the ALJ as part of his RFC assessment discussion.  R. at 15; 17.  Notably, the ALJ did not solely rely on plaintiff's receipt of unemployment benefits but properly considered this among many other factors in determining whether plaintiff was disabled.

Moreover, the ALJ provided several other well-supported reasons explaining why he discounted plaintiff's credibility which the magistrate judge finds constitutes substantial evidence.  R. at 21.  Pursuant to SSA 96-7p, the ALJ should consider plaintiff's treatment both including medication and other measures that the individual uses to relieve pain or symptoms. Here, the ALJ appropriately considered the conservative nature of treatment and medical

---

[6] Social Security Forum, Memorandum, *Receipt of Unemployment Insurance Benefits by Claimant Applying for Disability Benefits*, Vol. 29, No.11 (November 2007).

recommendations made by plaintiff's doctors. As an example, the ALJ discusses how plaintiff was advised by her doctor to follow a low fat, high fiber diet to help with her irritable bowel syndrome and stop taking Ambien but was consistently not compliant. R. at 21. Plaintiff's noncompliance with rather conservative doctor recommendations is relevant to her credibility as it undermines the alleged severity and nature of plaintiffs' purported disabling symptoms and conditions. Also, the ALJ properly identifies that the medical record is lacking evidence that plaintiff had significant adverse side effects from medication despite plaintiff's assertions to the contrary. R. at 21; 47-48.

Furthermore, the ALJ cites to evidence that plaintiff's primary care physician cleared her to go back to work on July 1, 2009 which is months after her alleged disability onset date of January 2009. R. at 44. However plaintiff's treating physician wrote that plaintiff "readily admit[ted]… that she simply does not want to go back to work, not just because [her shoulder] hurts but because she just does not want to work." R. at 740. Moreover, other doctors questioned plaintiff's credibility. For example, at plaintiff's January 27th hospital visit, the attending physician noted that plaintiff had "vague complaints" of pain and that her "history is completely unreliable and cannot put any weight on her." R. at 2048.

Overall, the magistrate judge finds that the ALJ's credibility determination was based on the proper application of the governing law and is supported by substantial record evidence. For these reasons, the magistrate judge finds that the ALJ did not err in his determination that plaintiff's subjective complaints were not fully credible prior to February 23, 2011.

### 3. THE ALJ PROPERLY RELIED ON THE VOCATIONAL EXPERT TESTIMONY

Plaintiff's final argument is that the ALJ improperly relied on the vocational expert testimony based on a hypothetical that did not include all of plaintiff's limitations. At the

hearing, the ALJ asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity prior to February 23, 2011.  R. at 23; 66-67.  The vocational expert testified that based on review of the evidence and given these factors, plaintiff's RFC precluded her from performing her past work, but that she was capable of performing "light, unskilled work"  specifically jobs as a clerical assistant, router, and laundry sorter prior to February 23, 2011.  R. at 22-24.  Based on this vocational expert finding, the ALJ concluded that plaintiff was "not disabled" prior to February 23, 2011.  R. at 24.

Under Fourth Circuit precedent, the vocational expert testimony should be accepted if based on a consideration of all of the evidence in the record.  *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006); *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).  Moreover, the vocational expert testimony should be in response to a hypothetical question that fairly set out all the claimant's impairments that are well-supported by record.  *See Walker  v. Bowen*, 889 F.2d at 50. To form a valid opinion, the vocational expert must assume as true the ALJ's determination as to the claimant's residual functional capacity.  *Hines*, 453 F.3d 559 at 566.

The magistrate judge finds that the ALJ properly relied on the vocational expert testimony.  In reaching his disability determination, the ALJ relied on the vocational expert testimony that was based on a hypothetical question that incorporated plaintiff's limitations that were well-supported by the evidence like plaintiff's inability to climb ropes, fully raise her right dominant arm and perform no more than simple, unskilled tasks.  Plaintiff's underlying argument is that the vocational expert's testimony was flawed because it did not incorporate all the limitations from the medical opinions of plaintiff's treating physicians.  As extensively discussed above, the magistrate judge finds that the ALJ did not err in discounting the medical opinions of

plaintiff's treating physicians and therefore was not required to rely on vocational expert testimony based on limitations found not to be credible and not supported by the evidence. *See Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987) (finding that the ALJ is not required to credit vocational expert testimony elicited in response to a hypothetical question that includes limitations that the ALJ finds not to be credible).

Accordingly, the magistrate judge concludes that the ALJ properly considered the vocational expert testimony as well as claimant's RFC, age, education, work experience, and other record evidence in finding that plaintiff was "not disabled" prior to February 23, 2011.

## VI. <u>RECOMMENDATION</u>

For these reasons, the undersigned recommends that plaintiff's Motion for Summary Judgment (No. 11) and Motion to Remand (No. 12) be denied, and that defendant's Motion for Summary Judgment (No. 16) be granted.

## VII. <u>NOTICE</u>

By means of the court's electronic filing system, the parties are notified as follows. Objections to this report and recommendation must be filed within fourteen (14) days of service on you of this report and recommendation. A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.

/s/
Thomas Rawles Jones, Jr.
United States Magistrate Judge

March 18, 2014
Alexandria, Virginia